Charles Herman **WYATT**, Petitioner,

v.

The **STATE OF OKLAHOMA** and Sam C. Johnston, Warden, Respondents.

No. 74–303–D.

United States District Court,
W. D. Oklahoma,
Civil Division.

Aug. 9, 1974.

Charles Herman Wyatt, pro se.

The State of Oklahoma and Johnston, represented by K. Karen Kennedy, Asst. Atty. Gen., Oklahoma City, Okl., for respondents.

## ORDER

DAUGHERTY, Chief Judge.

This cause is before the court on the petition of Charles Herman Wyatt for a writ of habeas corpus in which he challenges his detention by virtue of the judgment and sentence of the District Court of Oklahoma County, Oklahoma, in case No. CRF–70–758. The respondents have filed their answer by and through the Attorney General for the State of Oklahoma together with the original record in said Case No. CRF–70–758 and the record contained in the proceedings on petitioner's state application for post conviction relief, case No.

PC–74–133, Oklahoma Court of Criminal Appeals.

The petitioner contends that he is unlawfully detained and seeks his relief from custody on the following grounds:

1. He did not receive a fair trial because there was introduced in evidence a confession of his co-defendant Davis which incriminated the petitioner.

2. He was denied the effective assistance of counsel because there was a conflict of interest among the joint defendants all of whom were represented by the same attorney.

3. The trial court committed prejudicial error by failing to conduct a hearing to determine the validity of petitioner's confession.

4. The petitioner's confession which was received in evidence was not constitutionally valid.

The court has examined the files and records in this case including the transcript of the trial, the Opinion of the Court of Criminal Appeals on petitioner's direct appeal, Davis v. State, Okl. Cr., 488 P.2d 932, and the proceedings on petitioner's application for post conviction relief. It appears therefrom that in said case No. CRF–70–758 the petitioner was jointly charged with LeRoy Davis and Perry Earl Harding in the District Court of Oklahoma County, with the crime of Robbery With Firearms. After a trial by jury in which all of the defendants were represented by the same privately retained attorney, all were convicted and sentenced on the 4th day of June, 1970, to a term of 99 years imprisonment. Thereafter, the Public Defender of Oklahoma County perfected a timely appeal for all defendants in the Oklahoma Court of Criminal Appeals. The court found that statements of the defendants Davis and Wyatt inculpating other defendants were received in evidence and "the trial court should have instructed the jury as to the limitations of the admissibility of the accusatory hearsay statements.

We conclude that justice would best be served by modifying the judgments and sentences of defendants Wyatt and Harding from a term of 99 years to a term of 45 years imprisonment and as so modified, are affirmed. Judgment and sentence of defendant Davis is affirmed." 488 P.2d at 935.

Subsequently the petitioner filed an application seeking post conviction relief in the District Court of Oklahoma County. He raised four issues in this proceeding:

1. Frults of an illegal search and seizure were received in evidence at his trial.

2. The statement of a co-defendant inculpating the petitioner was wrongfully received in evidence.

3. A constitutionally impermissible confession was obtained from the petitioner and received in evidence.

The only factual allegations in support of this claim consisted of the reproduction of the police officer's testimony at trial. The petitioner further stated:

"It is petitioner's contention that the required warnings under Miranda v. Arizona, 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694,] were not, in fact, given in Criminal Case CRF–70–758, but that if they were given the people of the State of Oklahoma ·failed to establish that petitioner voluntarily, knowingly, and intelligently waived his right to remain silent and his right to counsel, absent an intelligent waiver." (p. 12, Petition for writ of Habeas Corpus in the District Court of Oklahoma County.)

4. The trial court failed to conduct a hearing on the voluntariness of petitioner's confession prior to accepting it in evidence contrary to the requirements of Jackson v. Denno, 378 U.S. 568 [84 S.Ct. 1774, 12 L.Ed.2d 908] (1964).

The sentencing court denied the petitioner relief without an evidentiary hearing on June 25, 1973. The petitioner did not file a Petition in Error until March 6, 1974 in the office of the clerk of the Court of Criminal Appeals. On March 12, 1974, that court entered an Order of Dismissal stating that the appeal was eight months out of time.

 The petitioner's contention concerning counsel's conflict of interest has never been presented to any court in the State of Oklahoma. There was no mention of the ineffective assistance of counsel in his application for post conviction relief in the District Court of Oklahoma County. Therefore, he has not exhausted his state remedies on this claim. The exhaustion doctrine requires that a state prisoner afford state courts the opportunity to consider and resolve claims of constitutional infirmity before raising these claims in federal court. Watson v. Patterson, 358 F.2d 297 (CA10 1966), cert. denied 385 U.S. 876, 87 S.Ct. 153, 17 L.Ed.2d 103. It is not sufficient that the federal habeas applicant has been through the state courts, but the "federal claim must be fairly presented to the state courts." Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971).

In his petition in this court in challenging the validity of his confession the petitioner made almost identical contentions as those in his state post conviction application:

"Petitioner strenuously argues that the alleged confession admitted into evidence at his trial (Tr. 115–116) was inadmissible and in violation of the Fifth Amendment to the U. S. Constitution. It is petitioner's position that the required warnings under Miranda v. Arizona, 384 U.S. 436, [86 S.Ct. 1602, 16 L.Ed.2d 694] were not, in fact, given in criminal case No. CRF–70–758; and the State of Oklahoma in the trial of this failed to establish that petitioner voluntarily, knowingly and intelligently waived his right to remain silent and his right to counsel absent an intelligent waiver." (p. 6, Petition for Writ of Habeas Corpus).

██ The particular defect claimed was that the "Miranda warnings does not mean (as the police officer testified) quote: 'In the event of prosecution'." Id. at p. 7. The argument is frivolous. The officer's advice was a full disclosure of petitioner's rights. (Tr. 115, 116). Specifically, concerning the use of any statement that might be obtained from the petitioner he testified:

"At this time I advised him that he had the right to remain silent, that anything he could say or would say could be used against him in the event of prosecution." (Tr. 115).

It is not significant that he employed the phrase "in the event of prosecution" rather than the "in a court of law" used by the opinion's author. Miranda v. Arizona, 383 U.S. at 479, 86 S.Ct. 1602, 16 L.Ed.2d 694. Miranda imposed no requirement that particular words be repeated. The emphasis is upon substance and not form. His petition therefor contained no meritorious claim. Perhaps because of the Response by the Attorney General, the petitioner in his "Response" enlarged his claims concerning the confession and, in fact, changed the whole thrust of his grounds for challenge. For the first time in this court, and never in the state courts, he alleged:

"At the trial, without objection, an oral confession by the petitioner was testified to by police officer, Bill Harrison. (Tr.–155, 116, 121).

The interrogating police officer upon upon being advised by petitioner that he declined to respond to any questioning without the advice of counsel failed to break off his interrogation of petitioner in the jail in recognition of his responsibility to pursue the interrogation no further. The said officer with the object of interrogating petitioner, made no effort to learn whether petitioner's right to and demand for counsel had been fulfilled in any respect. He told petitioner that he, Harrison, had learned some new information, and upon relating it to petitioner, Harrison felt the petitioner would then be willing to talk to him. Petitioner did not waive or relinquish his prior insistence upon having counsel. Harrison told petitioner that they had interrogated his co-defendants, downstairs, and that they had come clean, and would be witnesses for the state when the case came to trial. Duration of this attachment was exploited by Officer Harrison in attempting to draw the petitioner into conversation. Claims by Harrison to the petitioner of the co-defendant's complicity in the Robbery drew protestations and denials from petitioner. Petitioner repeated his demand for counsel because he was sick on drugs, but the officer continued to press on the co-defendant's involvement, drawing petitioner into statements involving himself: The actions of the officer in the interrogation provoked and goaded the petitioner into making statement which were the subject of the officer's testimony in court presented as the purported confession of petitioner. Petitioner was effectively irritated and spurred into such statements. Those statements were not given voluntarily, freely, with a full recognition of petitioner's choice under the circumstances, but were the product of subtle compulsion. For the above reasons petitioner is entitled to relief in this court under Miranda v. Arizona, supra."

This new factual basis for contesting the validity of the confession has not been presented to the state courts. Because the claim he is now trying to establish in this court differs substantially from the claim he originally made in state court he has failed to exhaust his state remedies. The state courts must be given an opportunity to pass on this new theory and facts. Gurule v. Turner, 461 F.2d 1083 (CA10 1972). See also Picard v. Connor, supra.

██ The petitioner has exhausted his state remedies on his contention that it was error for the trial court to admit

his confession without a hearing which he claims was required by Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). He misreads the court's decision. The court said when a confession *challenged as involuntary* is sought to be used against a criminal defendant at his trial he is entitled to a judicial ruling on voluntariness prior to admitting any confession. The record reflects, and the petitioner admits, that the confession was introduced without objection. There is no requirement for a court to conduct a hearing on voluntariness of a statement where the defense has made no objection and the officer has testified that prior to interrogation he advised the petitioner of his rights. Cano v. State of Arizona, 300 F.Supp. 549 (D.C.Ariz.1969). Our circuit has held that absent objection to introduction before jury of statements by accused as involuntary the issue of admissibility is not present and the court is not required to determine the voluntariness of the statements outside the presence of the jury. Garrison v. Patterson, 405 F.2d 696 (CA10 1969).

The remaining issue concerns the effect of the admission of an extrajudicial statement of the petitioner's co-defendant LeRoy Davis inculpating the petitioner. The petitioner has exhausted his state remedies on this question. At the trial Officer Bohan testified that after placing Davis in the patrol car he was advised of his rights and "LeRoy admitted he pulled the robbery." (Tr. 109). Officer Harrison testified that he interviewed Davis at the jail. After informing Davis of his rights he made this statement to the officer:

"Mr. Davis at this time stated that he and Williams (Wyatt) had entered the Ridgecrest Pharmacy for the purpose of robbing the pharmacy. He stated that Perry Harding was in the vehicle outside, but it was not his idea. Mr. Davis stated that it was his own idea to rob the pharmacy." (Tr. 117).

Harrison also testified to the petitioner's confession:

"He stated that on that date Sunday the 22nd that he and LeRoy Davis entered the Ridgecrest Pharmacy for the purpose of robbing the pharmacy. He further stated that Harding, Perry Harding, was sitting in the Volkswagen on the Southeast corner of the pharmacy with the car headed in a westerly direction and he stated that it was Harding that had the idea for the robbery." (Tr. 116).

For the defense Davis took the stand. He testified that he told the others he needed to get a prescription filled at the pharmacy (Tr. 142 and 144). He said the petitioner had no gun and just followed him in the pharmacy. (Tr. 145). According to him the petitioner was just looking at the postcards when Davis pulled his gun on the attendant. (Tr. 146 and 147). When the petitioner saw what Davis was doing he panicked and ran out of the store. (Tr. 149). When Davis completed the robbery and ran to the car he apologized to the others for involving them. (Tr. 151). He denied that he had ever discussed his plan to rob the store with either the petitioner or Harding. (Tr. 152). He further testified he put the money in the glove compartment of the car but that one of the policemen after the defendants had been arrested took the money out and stuffed it in petitioner's rear pocket. (Tr. 153 and 154).

Harding also took the stand and generally corroborated Davis's trial testimony. He insisted that neither he nor the petitioner had any knowledge of the planned robbery. The petitioner did not testify at the trial.

The petitioner principally relies upon Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) and Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968). In Bruton the court ruled that the admission in evidence of the confession of a co-defendant incriminating another defendant in a joint trial violates the other defendant's right of cross-examination secured by the Confrontation Clause of

the Sixth Amendment. The *Roberts* case held that this rule was applicable to state prosecutions by virtue of the Fourteenth Amendment. In the petitioner's case, however, Davis took the stand and denied making any statement to Officer Harrison which involved his co-defendants (Tr. 170) and completely exculpated the petitioner. This distinguishes it from *Bruton* as pointed out by the Supreme Court in a subsequent case:

> "We conclude that where a codefendant takes the stand in his own defense, denies making an alleged out-of-court statement implicating the defendant, and proceeds to testify favorably to the defendant concerning the underlying facts, the defendant has been denied no rights protected by the Sixth and Fourteenth Amendments." Nelson v. O'Neil, 402 U.S. 622, 629, 91 S.Ct. 1723, 1727, 29 L.Ed.2d 222 (1971).

 If for any reason there was error under these circumstances in receiving Davis's statements it was harmless beyond a reasonable doubt. The mere fact that the *Bruton* rule may have been violated does not automatically require reversal of the ensuing criminal conviction. As stated by the court in *Bruton:*

> "A defendant is entitled to a fair trial but not a perfect one." 391 U.S. at 135, 88 S.Ct. at 1627.

In this case the properly admitted evidence of guilt is overwhelming and the prejudicial effect of the co-defendant's statement is insignificant by comparison. The petitioner was identified by the victim as one of the robbers. He was apprehended within 5 or 6 minutes of the robbery (Tr. 152) in a car with the stolen narcotics plainly visible (Tr. 68). When searched the petitioner had $226 taken in the robbery in his pocket (Tr. 42). The petitioner himself confessed to the crime and the only difference in his statement and that of Davis was that petitioner said the robbery was Harding's idea and Davis said it was his idea. Unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required. Schneble v. Florida, 405 U.S.

427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972). This must be determined by this court reviewing the record and considering the probable impact "on the minds of an average jury". Harrington v. State of California, 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969). Applying this test it does not appear that the state's case would have been significantly less persuasive if Davis's station house statement had been excluded.

Accordingly, since the files and records examined by the court conclusively show the petitioner is not entitled to relief herein and there are no material issues of fact which require an evidentiary hearing, the Petition for Writ of Habeas Corpus will be denied.

It is so ordered.